Larry Michael **PARNELL,** Plaintiff,

v.

C. L. **WALDREP** and Bob **Dodgen,**
Defendants.

Joseph L. **SUTTON,** Donald W. **Bridges,** James L. **Thompson, Sr.,** Fred **Tolliver,** David **Doby,** James W. **Crowe,** Robert **McDowell,** Billy **Roberts,** John **McGill** and Charles **Smith,** Plaintiffs,

v.

C. L. **WALDREP,** Sheriff of Gaston County, Defendant.

Nos. C–C–79–136, C–C–79–365.

United States District Court,
W. D. North Carolina,
Charlotte Division.

April 21, 1981.

Clare O'Neill, North Carolina Prisoner Legal Services, Durham, N. C., for plaintiffs.

Frank B. Aycock, III, Charlotte, N. C., for defendants.

## ORDER OF PARTIAL SUMMARY JUDGMENT

McMILLAN, District Judge.

Plaintiff Larry Michael Parnell filed his original complaint *pro se* in this action on April 16, 1979. He brought suit under 42 U.S.C. § 1983 against C. L. Waldrep, sheriff of Gaston County, North Carolina, and Bob Dodgen, jail sergeant at the Gaston County Jail. The complaint alleged that while plaintiff was incarcerated at the Gaston County Jail, defendant Dodgen had refused to allow plaintiff to receive paperback books and magazines brought by plaintiff's mother to the jail. Subsequently, North Carolina Prisoner Legal Services sought and received permission to represent plaintiff in this action.

On August 22, 1979, plaintiff filed an amended complaint as a class action which alleged three constitutional violations: (1) that plaintiff and other inmates were not allowed to receive paperback books, magazines or newspapers, in violation of the First Amendment to the Constitution; (2) that plaintiff and other inmates were denied access to legal materials and thus denied adequate access to the courts; and (3) that plaintiff and other inmates were denied recreational opportunities, in violation of due process requirements and the Eighth Amendment. Plaintiff sought certification of a class of all persons who have been or will be incarcerated in the Gaston County Jail, and plaintiff requested declaratory, injunctive and monetary relief.

In an order filed March 12, 1980, the court set forth its rationale for ordering that the class represented by plaintiff be certified, but it inadvertently neglected to enter an order certifying the class. Thus the court now rules that the requested class be certified for the purposes of the relief granted in this order.

Plaintiffs Joseph L. Sutton, Donald W. Bridges, James L. Thompson, Sr., Fred Tolliver, David Doby, James W. Crowe, Robert McDowell, Billy Roberts, John McGill and Charles Smith, all inmates or former inmates of the Gaston County Jail, filed an action against Sheriff Waldrep on December 3, 1979. Their complaint makes several claims of constitutional violations, including claims that inmates are not allowed to receive newspapers and that they are denied access to legal materials. Those plaintiffs are also represented by North Carolina Prisoner Legal Services. In its March 12, 1980 order, the court stated that it would consolidate the cases of *Parnell* and *Sutton et al.* for determination on summary judgment motions unless plaintiffs' counsel objected. Counsel have not objected, and the court therefore orders that these cases be consolidated for motions for summary judgment in *Parnell* and partial summary judgment in *Sutton et al.*

The *Parnell* case was heard on April 11, 1980, on plaintiff's motion for summary judgment. Plaintiffs have submitted a memorandum, affidavits and a proposed order, along with depositions of the two defendants. On September 29, 1980, I visited the Gaston County Jail. The following undisputed facts are based on those documents, confirmed by my observations at the jail.

### I. Facts

On March 2, 1979, the North Carolina Department of Correction transferred plaintiff Parnell to the Gaston County Jail to await a hearing in Gaston County Superior Court on the revocation of a suspended sentence he had received for larceny. He

remained in the jail until March 29, 1979, but the hearing was never held. On March 25, 1979, his mother, Betty Parnell, brought various paperback books, magazines and newspapers to the Gaston County Jail, but defendant Dodgen refused to deliver the reading materials to Parnell.

Sheriff Waldrep ratified and approved of Dodgen's actions. In his deposition, Waldrep testified that he told Parnell the jail did not allow magazines and newspapers because inmates used them to stop up the plumbing and start fires. Waldrep said that the prohibition of paperback books, magazines and newspapers applied to all inmates, although inmates were permitted to receive Bibles and "little Christian tracts" distributed at the jail.

After he was denied access to the reading material, Parnell sought to file a complaint under 42 U.S.C. § 1983 in federal court and requested access to legal materials. Waldrep, however, advised him that the jail did not have a law library for his or any other inmate's use, but inmates could telephone their lawyers, who were usually public defenders. No legal counsel was available to help Parnell or other inmates in filing petitions for post-conviction relief in state or federal courts or actions under 42 U.S.C. § 1983. On March 29, 1979, Parnell was transferred to the Stanly County unit of the Department of Correction, where he prepared his *pro se* complaint in this action.

While Parnell was confined in the Gaston County Jail, he was given no opportunity for physical exercise or non-sedentary recreation. Sheriff Waldrep has testified that the jail has no area suitable for physical exercise or outdoor recreation. He said in his deposition, "I don't think there is recreation as you and I or the average citizen looks at it. . . . We have no exercise equipment."

Pretrial detainees are confined for up to ninety days and convicted inmates are confined for up to one hundred and eighty days at the Gaston County Jail. The jail is a self-contained unit with no windows or fresh air. The cells are illuminated by bright lights outside the cells and diffused lights inside the cells, which are used as night lights. A ventilation shaft is the only source of air.

The jail contains two types of cell blocks. There are four blocks with cells providing access to a small common area which runs the length of the cell block, called the "runaround." Inmates in the "runaround" blocks can eat their meals in the common area at a bench and table. Those inmates can engage in very limited activity in the "runaround" area, but not activity that requires much room to move around. Waldrep has seen inmates in the "runaround" doing exercises, playing checkers or cards, watching television or reading. There are also four cell blocks which contain only individual cells in which inmates are confined day and night. Inmates in the individual cells eat in their cells and may leave them only to shower, confer with their attorneys or go to court.

Inmates in both types of cells have no access to physical exercise facilities, outdoor recreation or fresh air. The jail has very limited space for the possible construction of exercise facilities. Anthony S. Kuharich, an expert in corrections and pretrial detention, has submitted an affidavit which states that the Gaston County Jail provides no meaningful opportunity for exercise to its inmates. He testified that physical exercise is essential for the physical and mental well-being of detainees and also for efficient jail administration. He said:

> "Where inmates are confined in closed and cramped quarters twenty-four hours a day, which seems to be the condition of all the inmates at the Gaston County Jail, they will frequently complain of the inability to sleep at night. They will seek out the jail doctor or nurse, and request sleeping pills. This, in turn, creates other physical and mental problems."

Based on these facts, the court now makes the following rulings of law.

## II. *Reading Materials*

█ Defendants' refusal to allow inmates to receive paperback books, maga-

zines and newspapers is unconstitutional. The prohibition of virtually all reading materials deprives the inmates of their First Amendment right to receive information and ideas. *Payne v. Whitmore*, 325 F.Supp. 1191 (N.D.Cal.1971). *See Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390, 89 S.Ct. 1794, 1806–1807, 23 L.Ed.2d 371 (1969); *Stanley v. Georgia*, 394 U.S. 557, 565, 89 S.Ct. 1243, 1248, 22 L.Ed.2d 542 (1969). Moreover, the jail, while prohibiting receipt of most other reading materials, established an exception for Bibles and "little Christian tracts," a practice which constitutes governmental encouragement or establishment of a particular religious doctrine. The First Amendment prohibits such establishment by Congress, and the establishment clause has long been applied to state action as well. *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

Defendant Waldrep initially attempted to justify the ban on reading material by saying that jail inmates used paperback books, magazines and newspapers to plug the toilets and start fires. Sheriff Waldrep's decision to ban such reading materials was an exaggerated response to those problems, if in fact they existed, in light of recent developments at the jail. In response to this action, Waldrep in May, 1980, began to allow newspapers and magazines into the cell areas. Waldrep later reported that no incidents of plugging toilets or starting fires had occurred after he implemented the changes. The court understands that inmates are now allowed to receive newspapers and magazines.

■ The absence of any incidents in the cells due to the relaxed policy regarding reading materials demonstrates that the jail's original policy was not a reasonable "time, place and manner" regulation to further a legitimate governmental interest. *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2202–03, 33 L.Ed.2d 222 (1972). The jail's prohibition of paperback books, newspapers and magazines was not a "limited restriction [constituting] a rational response by prison officials to an obvious security problem." *Bell v. Wolfish*, 441 U.S. 520, 550, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979). In *Bell v. Wolfish*, the Supreme Court upheld the constitutionality of a regulation at a pretrial detention center which prohibited the receipt by prisoners of hardback books unless mailed directly from publishers, book clubs or book stores. The "publisher only" rule, however, did not apply to the receipt of paperback books, magazines or newspapers. *Id.* at 552, 99 S.Ct. at 1881. The Court reasoned that the restriction on hardback books was justified in light of the prison's purported rationale for the regulation: "It hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings." *Id.* at 550–51, 99 S.Ct. at 1880.

■ No such rationale applies here. Defendants permitted the receipt of hardback books, but prohibited receipt of softbound publications. Defendants were concerned not with smuggling prohibited items into the jail, but only with alleged problems of fires and plugged toilets. There are many possible alternatives to effect this purpose, if necessary, that are less restrictive of inmates' First Amendment rights. For example, more vigilant supervision of inmates by jail deputies could prevent destructive activity. A checkout system for softbound publications would enable jail authorities to determine which inmates were responsible for causing disturbances with softbound publications. Thus, even if the need should arise to prevent inmates from starting fires or plugging toilets with softbound publications, the total prohibition of such reading materials would be an exaggerated response to the security problems.

Defendants have sought to remedy these constitutional violations themselves, and their responses partially satisfy plaintiffs and the court. In addition to allowing newspapers and magazines in the cells, the jail has instituted an "outreach" program with the Gaston County Library. Through the program, a librarian visits the jail each week and distributes library books chosen

by the inmates. The books are returned the following week, and inmates may select new books.

The court applauds defendants' efforts to remedy the constitutional defects of their past policies and to provide limited opportunities for relief from forced idleness at the jail.

■ A remaining issue, however, involves the receipt by inmates of paperback books because defendants have admitted only to allowing receipt of magazines and newspapers. Since defendants have not shown that a ban on paperbacks is in any way justified to promote security or other legitimate governmental ends, the court will direct defendants to lift the ban on receipt of paperback books by inmates.

Because of the voluntary changes made by defendants, the court will not order any other affirmative relief on the issue of reading materials. However, it will issue a declaratory judgment that the jail's prior ban on softcover reading materials is unconstitutional, and defendants will be permanently enjoined from reinstituting the ban.

### III. *Access to Legal Materials*

■ Defendants provide inmates with no access to a law library or other legal materials. The inmates' only legal resource is a telephone, on which they may call their attorneys. While this system might suffice for most inmates awaiting trial, who are constitutionally entitled to appointed counsel at trial, it does not insure that convicted inmates or pretrial detainees seeking to file federal and state petitions for habeas corpus or post-conviction relief, and civil rights suits, will have meaningful access to the courts. The Supreme Court required that such access be provided to inmates in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), which held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in

the law." *Id.* at 828 & n.17, 97 S.Ct. at 1498 & n.17. Defendants have not met this constitutional requirement.

■ As the Court in *Bounds* noted, jail officials may provide meaningful access to the courts either through adequate law libraries or adequate assistance from lawyers. In *Williams v. Leeke*, 584 F.2d 1336 (4th Cir. 1978), *cert. denied*, 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979), the Fourth Circuit reaffirmed the holding in *Bounds*. The court found that inmates at the Richmond City Jail did not have meaningful access to the courts where inmates had access to the jail's law library for only forty-five minutes at a time, three days a week. *Id.* at 1340. The court stated:

"We should not be understood to say that every small jail must have a law library, but misdemeanants serving sentences of up to 12 months in local jails should not be left wholly without resources to prosecute potentially valid habeas claims or claims challenging the conditions of confinement or the adequacy of medical care. The provision of a law library might be unreasonably expensive, but making available the services of a lawyer, advanced law students or even paralegals might be quite inexpensive and much more effective. We only hold that *a prisoner in a city jail is entitled to reasonable access to the courts and that is not provided one serving a substantial sentence of confinement if, without other legal assistance, he has access only to a law library which is so restricted as to be unmeaningful.*"

*Id.* at 1340–41 (emphasis added).

■ Convicted inmates in the Gaston County Jail serve up to one hundred and eighty days in the jail, yet they have no access to a law library or legal services. The jail can hold one hundred and eighty inmates in its cramped quarters, although its usual population is closer to one hundred. To receive constitutionally mandated access to the courts, those inmates must be given either adequate legal assistance or adequate access to a law library.

Plaintiffs have proposed that the jail retain a small group of attorneys on a contractual or bid arrangement to provide legal services for inmates in post-conviction proceedings and civil rights actions. They claim that providing legal services for inmates would be more economical and effective than establishing a law library at the jail. Alternatively, they propose that the jail provide a library which contains legal materials approved in *Bounds v. Smith, supra,* and several additional items.

It would be inappropriate for the court to order imposition of one of these plans without response from defendants. Even if providing legal services would be less expensive than establishing a law library, defendants may have other reasons for preferring the latter method. The court, therefore, will direct the parties to meet and attempt to reach a solution which satisfies the constitutional standard. The defendants must present a constitutionally acceptable plan to the court and be prepared to implement it by July 1, 1981. The plan may be an interim plan, which defendants may later modify upon approval by the court.

## IV. *Opportunity for Physical Exercise*

■ Defendant Waldrep has admitted that inmates at the Gaston County Jail have no recreational facilities and very little room for physical exercise. The layout of the jail permits almost no opportunity for the inmates to move around. The inmates eat in their cells or in the "runaround" area and are permitted to leave only to shower, meet with their attorneys or go to court. This lack of exercise and recreation is damaging to the inmates' physical and mental health, according to the affidavit of Mr. Kuharich. In jails like the Gaston County Jail, "where prison life for most inmates is characterized by idleness and prolonged daily confinement in their cells, adequate exercise is critical .... Its relationship to the maintenance of health is obvious." *Ramos v. Lamm,* 485 F.Supp. 122, 158 (D.Colo.1979). In light of these circumstances, the court finds that the jail's failure to provide proper physical exercise

and recreation to pretrial detainees violates the due process clause of the Fifth and Fourteenth Amendments, and the failure to provide exercise and recreation to convicted inmates amounts to cruel and unusual punishment, which is prohibited by the Eighth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Numerous courts have held "that confinement for long periods of time without the opportunity for regular exercise does as a matter of law constitute cruel and unusual punishment." *Lock v. Jenkins,* 464 F.Supp. 541, 551 (N.D.Ind.1978). *See Campbell v. Cauthron,* 623 F.2d 503 (8th Cir. 1980); *Smith v. Sullivan,* 553 F.2d 373 (5th Cir. 1977); *Spain v. Procunier,* 408 F.Supp. 534 (N.D.Cal.1976). In a case analogous to this one, the Eighth Circuit found that inmates in an Arkansas county jail "spend too many hours in their cells without exercise." *Campbell v. Cauthron, supra,* 623 F.2d at 505. That court held that jail inmates, who were kept in their cells except for court appearances and showers, were denied physical exercise in violation of the Eighth Amendment for convicted inmates and in violation of the Fifth and Fourteenth Amendments for pretrial detainees. *Id.* at 506–07. The *Campbell* court ordered that each inmate who was confined to his cell for more than sixteen hours per day be given the opportunity to exercise at least one hour per day outside the cell. The court stated, "Merely allowing the inmates to walk around in the narrow corridor between cells does not provide adequate exercise." *Id.* at 507.

Here the inmates suffer a similar denial of the opportunity for exercise. They are also kept in their cells except for showers, meetings with their attorneys and court appearances. Even though some of them have access to the narrow "runaround" area during the day, that area does not provide adequate opportunity for physical exercise. The "runaround," which measures only a few feet in width, is too small to provide meaningful exercise. Half of the cell blocks do not even have access to a "runaround."

Plaintiff Parnell has prepared a lengthy list of possible remedies drawn from the standards of the American Correctional Association. While the court endorses these standards, it is not now prepared to order Gaston County to adopt them in full without the opportunity to participate in the design of a plan. Instead, the court will direct attorneys for plaintiffs and defendants to meet to discuss a plan which would provide, at a minimum, the following recreational opportunities:

1. Opportunity for inmates to have at least one hour of recreation outside their cells per day, five days a week.

2. This opportunity for recreation should include full-fledged physical exercise, for example, weight lifting, basketball, volleyball, or running.

3. Recreational opportunities must be available to all pretrial detainees and convicted inmates.

 The court recognizes that the Gaston County Jail has little room in which to establish facilities for physical exercise and that it would pose security problems to permit inmates outdoor recreation. Nevertheless, plaintiffs have pointed out two possible areas in the existing jail which could house facilities for physical exercise and sports activities—the "sally port" on the first floor and three seldom used cells on the second floor. Outdoor recreation is preferred to indoor activities, and some courts have held that the lack of outdoor exercise as a matter of law violates the Eighth Amendment. *See, e. g., Sinclair v. Henderson*, 331 F.Supp. 1123, 1131 (E.D.La.1971). But provided that inmates at the Gaston County Jail are afforded the opportunity for adequate indoor exercise, the court will not require that the jail also provide special facilities for outdoor recreation.

 The expense of providing exercise facilities does not absolve defendants from meeting the constitutional requirement to provide exercise opportunities. As the Eighth Circuit has stated, the court "cannot permit unconstitutional conditions to exist simply because prison officials cannot or will not spend the money necessary to fulfill constitutional requirements." *Campbell v. Cauthron, supra*, 623 F.2d at 508. *Accord, Finney v. Arkansas Board of Correction*, 505 F.2d 194 (8th Cir. 1974).

 Two Fourth Circuit cases affect—but do not determine—the outcome of this case. In *Sweet v. South Carolina Department of Correction*, 529 F.2d 854 (4th Cir. 1974), the court stated that two one-hour exercise periods per week for South Carolina prisoners might not violate the Eighth Amendment "if confined to a relatively short period of maximum confinements," but that the rule may be quite different where restrictions on exercise extend over a longer time. *Id.* at 866. The court did not specify what it meant by "a longer time." Here inmates received *no exercise*—not even two hours a week—even though they could be confined up to one hundred and eighty days, in addition to time spent awaiting trial. While two hours of physical exercise a week may not be *per se* unconstitutional, it falls short of Eighth Amendment requirements in jails, such as Gaston County's, where inmates have little or no opportunity ever to leave their cells and may be confined for up to six months.

In *Clay v. Miller*, 626 F.2d 345 (4th Cir. 1980), the court found that a Virginia jail in which inmates were permitted access to day rooms measuring 32 by 6.5 feet provided ample opportunity for recreation to satisfy minimum constitutional standards. The court noted, "In deciding whether conditions at a jail are so onerously burdensome as to reach constitutional dimensions, courts must look at the totality of the circumstances, including the extent to which the restrictions adversely affect the mental or physical health of the inmate." *Id.* at 347. Here inmates have little or no opportunity to exercise in day rooms. The affidavit of Mr. Kuharich shows that the mental and physical health of inmates of the Gaston County Jail is adversely affected by the jail's total lack of opportunity for exercise "required under minimum constitutional standards." *Id.*

## V. *Other Claims for Relief*

In addition to seeking declaratory and injunctive relief on behalf of a class, plaintiff Parnell's complaint seeks monetary damages, attorneys' fees and costs. There is not enough evidence before the court for it to rule on Parnell's claim for damages. If Parnell wants to pursue his claim for monetary relief, he will be directed to submit to the court, through his attorneys, a detailed accounting of any actual damages suffered and an affidavit or memorandum in support of any other claims for damages, including punitive damages.

Plaintiff *Parnell* has prevailed on the merits of all three issues, and plaintiffs in *Sutton et al.* have prevailed on the issues of *reading* materials in the jail and access to legal materials. Plaintiffs thus are entitled to an award of costs and attorneys' fees for the claims decided here. 42 U.S.C. § 1988. *See Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Plaintiffs' attorneys—North Carolina Prisoner Legal Services—will be directed to submit a request for costs and attorneys' fees with attached affidavits which set forth their expenses and the number of hours devoted to the case. The court will rule on the request for costs and attorneys' fees at the same time that it issues a final judgment in the *Parnell* case.

## VI. *A Word About the Sheriff*

Sheriff Waldrep did not build the jail nor invite all its numerous inmates to be his guests in its cramped confines. He has in the main responded affirmatively to those changes suggested by the court which he has the power to make. As to physical facilities and exercise, he is doing the best he can with what he has. The trouble is, what he has is totally inadequate to meet constitutional standards. He will require help from other county authorities to comply with this order. This suit and this order deal with *public*—not *private*—problems.

IT IS THEREFORE ORDERED:

1. That the cases of *Parnell v. Waldrep* and *Sutton et al. v. Waldrep* be consolidated for the motion for summary judgment filed by plaintiff in *Parnell.*

2. That the class of all persons who have been or will be incarcerated in the Gaston County Jail, as represented by plaintiff Parnell, be certified.

3. That plaintiff Parnell's motion for summary judgment is allowed on all three issues, and that *Sutton et al.* be awarded summary judgment on the issues of access of inmates to paperback books, magazines and newspapers in the jail and of meaningful access to the courts.

4. That a declaratory judgment issue stating that the Gaston County Jail's policy of prohibiting receipt by inmates of paperback books, newspapers and magazines is unconstitutional.

5. That defendants are permanently enjoined from prohibiting receipt by inmates of paperback books, newspapers and magazines.

6. That a declaratory judgment issue stating that the Gaston County Jail's failure to provide meaningful access to courts for its inmates, either by access to a library or to adequate legal services, is unconstitutional.

7. That defendants submit a plan which provides for constitutionally adequate access to the courts by inmates for post-conviction and civil rights claims. This plan must be submitted to the court by July 1, 1981. Defendants are required to implement that plan, or an interim plan which meets the court's approval, by August 1, 1981. Defendants are to report to the court on the adoption of interim and permanent plans by July 1, 1981. Implementation of any plan will be subject to the court's approval.

8. That a declaratory judgment is hereby issued that the Gaston County Jail's failure to provide opportunity for meaningful physical exercise is unconstitutional.

9. That defendants must submit a plan which provides at least for the exercise opportunities outlined above in Section III by July 1, 1981. That plan, or an interim plan which meets the court's approval, must

be implemented by August 1, 1981. Defendants will report to the court on the adoption of interim and permanent plans by July 1, 1981. Implementation of any plan will be subject to the court's approval.

10. That plaintiffs, within thirty (30) days of the filing date of this order, submit an affidavit or memorandum in support of any claims for monetary damages on the issues decided in this order.

11. That plaintiffs' attorneys, within thirty (30) days of the filing date of this order, submit affidavits in support of their request for costs and attorneys' fees.