**JOHN L., Individually and on behalf of All Other Persons Similarly Situated, By his Next Friend Andrew J. Shookhoff,**

v.

**Betty ADAMS.**

**No. 3:88–0924.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 28, 1990.

David Kozlowski, Legal Services of South Cent. Tennessee, Inc., Columbia, Tenn., Andrew J. Shookhoff, Legal Clinic, Vanderbilt University School of Law, Nashville, Tenn., for plaintiff.

Kimberly Dean, Deputy Atty. Gen., State of Tenn., Nashville, Tenn., for defendant.

## MEMORANDUM

KENT SANDIDGE, III, United States Magistrate.

By an Order dated December 29, 1988, the Court referred the above captioned civil rights action to the undersigned for consideration of its malicious or frivolous nature, 28 U.S.C. § 1915(d); *Malone v. Colyer*, 710 F.2d 258, 260–61 (6th Cir.1983), and further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and Local Rules of Court. By an Order entered September 21, 1989, both parties consented pursuant to 28 U.S.C. § 636(c) to have the United States Magistrate conduct any and all further proceedings, including the entry of judgment in this civil action.

Plaintiff John L. filed this civil rights action *in forma pauperis* through his next friend, Andrew J. Shookhoff, on November 7, 1988, under 42 U.S.C. § 1983. At the time of filing, John L. was a minor 17 years of age incarcerated at the Taft Youth Center in Pikeville, Tennessee. The Court granted plaintiff's motion for class certification on June 16, 1989, pursuant to Federal Rule of Civil Procedure 23(b)(2). Plaintiffs presently consist of a class of persons who are confined or will be confined in secure institutions operated by the Tennessee Department of Youth Development. Defendant Betty Adams is the Commissioner of the Tennessee Department of Youth Development.

Presently pending is plaintiffs' motion for summary judgment filed June 12, 1989. Plaintiffs seek summary judgment on two issues: 1) whether juveniles incarcerated in secure facilities have a right of access to the courts; and 2) whether defendant has failed to provide juveniles committed to her custody and incarcerated in secure facilities with adequate, effective and meaningful

access to the courts. Plaintiffs assert that there is no genuine issue as to any material fact with respect to these questions, and that they are entitled to judgment as a matter of law. Plaintiffs request that upon granting summary judgment, the Court set this case for hearing on the issue of appropriate remedy.[1]

■ The Tennessee Department of Youth Development operates three correctional facilities designed for juveniles, which confine approximately 650 inmates.[2] These inmates range in age from 12 to 20 years old. Only children found guilty of commiting a delinquent act can be sentenced to a correctional facility. *Doe v. Norris*, 751 S.W.2d 834 (Tenn.1988) (holding that housing status offenders in secure penal facilities with delinquents violates constitutional guarantees of equal protection and substantive due process). A "delinquent act" is an act which would be a crime if the child was over the age of 18. *See* T.C.A. § 37–1–102(b)(8) (1989 Supp.). If a child is found to be delinquent by the Juvenile Court, the Court has a number of dispositional or sentencing options. T.C.A. § 37–1–131. Among these is commitment of the child to the custody of the Department of Youth Development. *Id.* Most inmates are confined for indefinite terms pursuant to T.C.A. § 37–1–137(a)(1)(A). Approximately 100 inmates have been sentenced to definite terms which can last until their 21st birthday. Eighty percent of the inmates have been found delinquent based upon charges which would be felonies if they were adults.

Spencer Youth Center is located in Davidson County near Nashville, Tennessee, and is currently the largest juvenile facility with nearly 300 inmates. Spencer houses both boys and girls. Wilder Youth Center is located in Fayette County in West Tennessee. Wilder accepts children of all ages from the West Tennessee area.[3] Taft Youth Center is located in Bledsoe County in East Tennessee. Taft holds the older juveniles, and many of those who have been commited for more serious offenses and who are serving longer terms. Taft is considered the "maximum security institution" of Tennessee's juvenile correctional facilities.[4]

The Supreme Court has consistently noted that the nature of juvenile incarceration is similar enough to adult incarceration such that juveniles are entitled to many of the same constitutional guarantees as adults upon facing incarceration. Juveniles, like adults charged with crimes, have a right to adequate notice of the charges, a right to be represented by counsel, a right to confront and cross-examine adverse witnesses, and the right to be free from self-incrimination. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Juveniles are entitled to other constitutional guarantees which had traditionally been reserved for adult criminal trials. A juvenile may be found guilty only upon a showing of proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Furthermore, jeopardy attaches at the juvenile court adjudicatory hearing entitling juveniles to the protections of the Double Jeopardy Clause of the Constitution. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

The Supreme Court has extended these procedural protections to juveniles because the potentially severe consequences of a juvenile proceeding are similar to a criminal trial despite the ostensibly "civil" na-

1. Plaintiffs seek declaratory and injunctive relief for defendant's alleged violation of their constitutional rights.

2. Previously these facilities were under the control of the Tennessee Department of Corrections, Division of Youth Services. By a law effective July 1, 1989, control was transferred to the newly created Department of Youth Development. 89 Tenn.Pub.Acts Chap. 288.

3. Previously, while under the operation of the TDOC, Wilder primarily housed younger boys from all over the State.

4. A fourth institution, the Tennessee Youth Center, officially closed on June 30, 1989. There

ture of the juvenile proceedings.[5] The Court stated in *Breed* that,

> We believe it is simply too late in the day to conclude ... that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years.

421 U.S. at 529, 95 S.Ct. at 1785.

■ The same concern for the seriousness of juvenile detention which requires the recognition that juveniles have constitutional rights to procedural protections at juvenile commitment hearings motivates this Court to recognize that incarcerated juveniles have a right of access to the courts comparable to incarcerated adults. Adults incarcerated in State penal facilities have a constitutional right of access to the courts. *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Constitution[6] imposes on the State an affirmative obligation to assure that all inmates have access to the courts which is adequate, effective and meaningful. *Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495 (1977); *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir.1983). An inmate must be furnished with legal assistance so that he can prepare petitions for writs of habeas corpus challenging the legality of confinement. *Johnson*, 393 U.S. at 489, 89 S.Ct. at 750. An inmate is also entitled to assistance so that he can file civil rights actions. *Wolff v. McDonnell*, 418 U.S. 539, 577–580, 94 S.Ct. 2963, 2985–2986, 41 L.Ed.2d 935 (1974). *See Bounds*, 430 U.S. at 823, 97 S.Ct. at 1495. A meaningful right of access to the courts requires legal

assistance at the pre-pleading stage to determine if a colorable claim exists, as well as assistance in drawing up the pleadings. 430 U.S. at 825, 97 S.Ct. at 1496. *See also Penland v. Warren County Jail*, 759 F.2d 524, 532 (6th Cir.1985).

■ The right of access to the courts imposes *affirmative* obligations on State officials; that is, State officials must do far more than simply refrain from erecting barriers to an inmate's access to legal assistance or to the courts. In order to fulfill its obligation to adult inmates confined in State penal facilities, the State must provide inmates with an adequate law library or adequate assistance from persons trained in the law. 430 U.S. at 828, 97 S.Ct. at 1498.

The State's affirmative obligation to provide inmates with access to the courts also applies to inmates confined in rural county jails. *Penland v. Warren County Jail*, 797 F.2d 332, 335 (Jones, J., concurring) (6th Cir.1986). This affirmative obligation is even imposed upon officials operating facilities housing inmates with brief sentences, so long as the inmate is confined long enough that he or she has sufficient time to petition the courts. *See, e.g., Morrow v. Harwell*, 768 F.2d 619 (5th Cir.1985); *Parnell v. Waldrep*, 511 F.Supp. 764 (W.D.N.C.1981). Courts also recognize that people in involuntary institutionalized settings other than penal institutions are entitled to an affirmative right of access to the courts. *Ward v. Kort*, 762 F.2d 856, 858 (10th Cir.1985) (holding that *Bounds* applies to individuals who are under involuntary civil commitment to a mental hospital); *King v. Atiyeh*, 814 F.2d 565, 568, n. 2 (9th Cir.1987) (holding that *Bounds* applies to persons convicted of crimes and later committed to mental hospitals); *Johnson by Johnson v. Brelje*, 701 F.2d 1201, 1207 (7th

---

are no plans to reopen this institution.

**5.** State statutory provisions also provide children charged with committing a delinquent act various procedural protections similar to those offered to adult criminal defendants. *See* T.C.A. §§ 37–1–126, 37–1–127, 37–1–129(b), 37–1–

159(a); and Tennessee Rules of Juvenile Procedure 21 and 30.

**6.** The constitutional right of access to the courts has been described as deriving from both the Due Process and Equal Protection Clauses. *Murray v. Giarratano*, —— U.S. ——, 109 S.Ct. 2765, 2771 and n. 6, 106 L.Ed.2d 1 (1989).

Cir.1983) (holding that *Bounds* applies to individuals who are commited to mental health centers after a finding that they are not competent to stand trial); *Orantes–Hernandez v. Meese,* 685 F.Supp. 1488, 1510 (C.D.Cal.1988) (holding that *Bounds* applies to Central Americans detained by the Immigration and Naturalization Service).

There is nothing about the nature of juvenile confinement which justifies limiting the recognition of the right of access to the courts to adult inmates. One court faced with the issue noted that, "juveniles commited to state training schools ... no less than adult offenders are entitled to reasonable access to the courts." *Morgan v. Sproat,* 432 F.Supp. 1130, 1158 (S.D. Miss.1977). No court confronted with the issue has declined to recognize a juvenile's right of access to the courts. In holding that a social worker's failure to reveal information that might lead to the release of a confined juvenile violated that juvenile's right of access to the courts, the First Circuit Court of Appeals recognized that *Bounds* applies to juvenile correctional systems. *Germany v. Vance,* 868 F.2d 9, 16 (1st Cir.1989). *See also State of West Virginia ex rel. K.W. and C.W. v. Werner,* 161 W.Va. 192, 242 S.E.2d 907, 921 (1978) (recognizing that various benefits facilitating affirmative access to the courts granted to incarcerated juveniles by a state statute arise out of the constitutional guarantees identified in *Bounds* ).

Juveniles have the same need as adult inmates for a right of access to the courts in order to file writs of habeas corpus and civil rights actions. Depositions of Tennessee's juvenile correctional employees indicate that juvenile inmates regularly complain of issues which are commonly the subject of lawsuits, such as concerns about their commitment, appeals, placement and release. Juveniles also complain of institutional problems involving assaults, the disciplinary process, discrimination, and medical care.[7] A juvenile confined to a Tennessee correctional facility bears an average sentence of 316 days, and many inmates serve longer sentences. This is ample time to petition the courts. A juvenile's need for access to the courts may even be greater than an adult's in that access to the courts assists the rehabilitative process. In recognizing a juvenile's right of access to the courts, *Morgan* noted that "the rehabilitation of a juvenile ... is seriously interferred with if he believes that his legal rights have been violated." 432 F.Supp. at 1158. Whereas adult inmates do not have a constitutional right to rehabilitation,[8] this is arguably not the case for juveniles. *See Id.,* at 1135–1136.[9]

It is apparent that defendant is not providing juveniles incarcerated in secure juvenile facilities in Tennessee with access to the courts that is adequate, meaningful and effective. Defendant has done nothing to erect barriers between the juvenile inmates and their access to already retained counsel or to mail and telephone privileges.

**7.** Plaintiffs also offer a specific example by the affidavit of the named plaintiff, John L. John L. is an indigent who was in the custody of the Tennessee Department of Human Services before he was placed in the custody of the Department of Corrections. John L. attests that he did not receive legal assistance at his initial commitment hearing. John L. was displeased with his placement at Taft Youth Center because Taft is designed for maximum security inmates and John L. was only found guilty of running away from home. No employee at Taft attempted to direct John L. to legal assistance, although John L. did fill out the legal aid form that he was given at orientation. A year and a half later John L. received his first contact with legal aid, which was the visit from Mr. Shookhoff. It seems probable that even Mr. Shookhoff would not have visited John L. if Mr. Shookhoff had not been in the process of preparing the lawsuit in question.

**8.** The Supreme Court has held that adult inmates have no constitutional right to rehabilitation. *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Consequently, any protected liberty interest in rehabilitation must be grounded in state law. Tennessee has enacted the Prisoner Rehabilitation Act of 1970, T.C.A. §§ 41–21–501, *et seq.* The provisions of the Act, however, fail to create any enforceable liberty interest in rehabilitation. *Grubbs v. Bradley,* 552 F.Supp. 1052, 1125 (M.D.Tenn. 1982).

**9.** T.C.A. § 37–1–131 provides that a goal of juvenile committment is rehabilitation.

However, the Department of Youth Development is not shouldering its affirmative obligation to ensure that incarcerated juveniles have access to the courts.

The three secure institutions in Tennessee do not contain law libraries, nor are there jailhouse lawyers or inmate writ writers available to assist their fellow inmates. Neither does the Department provide inmates with assistance from other legally trained individuals. Inmates arriving at each of the three facilities undergo an orientation process. During orientation it is explained to the inmate that he or she is allowed to contact a source of legal assistance. Inmates are told that if they do not have their own lawyers, they may request access to the local legal aid program. The inmates are presented with a legal aid form which they may complete and submit to a counselor. Inmates at Taft Youth Center are told that if they do not have a lawyer they can contact Southeast Legal Services in Chattanooga. Inmates at Spencer Youth Center are told that they should first utilize their own attorneys, but if that is not successful, they can contact legal aid in Davidson County. Inmates at Wilder Youth Center are told that if they do not have their own lawyer, they may contact Memphis–Area Legal Services.

In most cases these local legal services offices are unable to assist juveniles upon request. Wilder Youth Center Superintendent Seth Garrington admitted in deposition that he had recently learned that Memphis–Area Legal Services does not provide assistance to incarcerated juveniles. *See also* Deposition of Wilder Youth Center Correctional Counselor Kathy Bandy.

Officials at Taft Youth Center are unsure of the extent to which Southeast Legal Services satisfies the legal requests of incarcerated juveniles. James Bradley, Executive Director of Southeast Tennessee Legal Services attests that as a matter of policy, his office cannot accept cases involving juvenile challenges to the fact or length of their confinement. Due to its limited resources, Southeast Legal Services is also unable to handle challenges to conditions of confinement. However, if the juvenile makes allegations of severe physical abuse, an attorney might speak with the inmate on the telephone. If the attorney is satisfied that the juvenile's allegation has merit, the attorney might refer the juvenile to the ACLU or to the Vanderbilt University Legal Clinic. In making this referral, Legal Services realizes that the ACLU and Vanderbilt Legal Clinic cannot provide legal assistance on a regular basis to juveniles incarcerated at Taft Youth Center. Mr. Bradley attests that the end result is that the child will probably not receive any legal assistance.

Superintendent of Spencer Youth Center, Rick Henderlight, and members of his staff recognize that not many of the juveniles requesting legal aid actually receive assistance. The only regular source of legal assistance provided to inmates at Spencer Youth Center is the Davidson County Public Defender's Office. Joan Hamner, Davidson County Public Defender for the Juvenile Division, attests that her ability to represent juvenile inmates at Spencer is limited by the ·Public Defender's Office charter and by insufficient funds. The Office is precluded from representing any person unless the Office represented that person at the trial court level. Thus, the Office cannot represent youths committed to Spencer from a county other than Davidson. Ms. Hamner also notes that even with respect to Davidson County youth commited to Spencer, the Office represents well under 25 percent of those charged with delinquent offenses in the County.

Ms. Hamner also attests that the Public Defender Offices in other counties of the State do not have the resources to provide post-commitment representation for incarcerated juveniles. Aside from representation provided by Ms. Hamner to a select group, little else is available to Spencer inmates. On rare occasions, Superintendent Henderlight makes a special effort to locate an attorney to represent a youth in an egregious case. This is by no means the norm, however. Other legal assistance groups, particularly Friends of Spencer and the Vanderbilt Legal Clinic, provide occasional representation to incarcerated

youths. Ms. Hamner attests that this representation is so rare as to be "all but nonexistent," however.. She attributes this in part to a recent statutory change requiring post-commitment challenges to be filed in the county of commitment. T.C.A. §§ 37-1-303(a) and 37-1-308. This has made it extremely difficult for these legal aid groups, which operate out of Davidson County, to provide assistance for youths confined at Spencer but committed outside of the County.

Defendant argues that some of the deposition evidence offered by plaintiffs is merely speculative, consisting of the general impressions of institutional superintendents and employees that inmates are not receiving adequate legal assistance. Defendant points out that Department of Youth Development employees have not monitored the contents of inmate mail, listened to inmate phone calls, or sat in on inmate legal conferences. Defendant suggests that without such a systematic study of the quality of legal assistance provided to inmates, the institutional employees cannot be completely sure that Legal Services or the inmates' private attorneys are not satisfactorily handling juvenile legal assistance needs. Defendant's contention may have some basis with respect to Wilder Youth Center where plaintiffs have not offered an affidavit from Memphis–Area Legal Services attesting that they are unable to provide legal services to incarcerated juveniles.

■ However, defendant's argument is without merit in light of the fact that it is the State that bears the burden of demonstrating the adequacy of an inmate's access to the courts. *See Storseth v. Spellman,* 654 F.2d 1349, 1352 (9th Cir.1981); *Campbell v. Miller,* 787 F.2d 217, 226 (7th Cir. 1986). The mere suggestion that perhaps plaintiffs' proof is not as strong as it possibly could be is not sufficient to ward off summary judgment.

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.,* 106 S.Ct. at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

The only real evidence which defendant offers to show that the Department of Youth Development is providing incarcerated juveniles with meaningful access to the courts is the new Public Defender Act, 89 Tenn.Pub.Acts Chap. 588, Sections 1 and 5(a), (effective September 1, 1989). This enhanced public defender system creates Public Defender Offices in the counties across the State and contemplates the provision of legal services to indigent persons, including juveniles, in all State criminal proceedings, including appellate and post-conviction proceedings. Defendant admits that the extent to which the new public defender system will be able to provide legal services to juveniles at Taft, Spencer and Wilder is unclear at this point.

Joan Hamner, whose district is not authorized to receive an additional public defender, attests that Davidson County's limited budget will not enable her office to set up a legal assistance program for children at Spencer Youth Center. Although the new Act provides for representation at post-conviction proceedings, Hamner's affidavit indicates that this is largely wishful thinking. Hamner attests that despite the recent establishment of Public Defender Offices throughout the State, the present level of staffing and funding is such that no Office will be able to provide post-commitment representation for juveniles in correctional facilities. Hamner points out that the Public Defender Office located in the county of the correctional facility will be

too greatly burdened to provide assistance to every needy youth. This burden is exacerbated by the statutory requirement that a post-conviction suit be brought in the county of commitment, because it requires the public defender to travel to this outside county to process the lawsuit. Hamner's affidavit implies that although the statute authorizes post-conviction representation, this must necessarily take second priority to providing indigent inmates with trial representation.[10]

It is also obvious from the face of the statute that it does not authorize legal assistance for the filing of civil rights lawsuits. Furthermore, the statute does not contain a provision for general legal assistance, e.g., a resource for juveniles to make inquiries at the pre-pleading stage to determine if a colorable claim exists. Although it is unestablished at this point exactly what defendant must do to provide juvenile inmates with constitutionally adequate access to the courts, it is clear that the State's affirmative obligation cannot be met by the new public defender program.[11] Defendant cannot sustain her burden of proof that she is presently affording plaintiffs with adequate, meaningful and effective access to the courts. As defendant has not tendered enough evidence that a reasonable jury could return a verdict in her favor, plaintiffs' motion for summary judgment is granted.

The Court reserves judgment on the issue of exactly what the State must do to furnish juveniles with adequate, effective and meaningful access to the courts. At a minimum, defendant has an affirmative obligation to assist juveniles at the pleading and pre-pleading stages in preparing habeas corpus suits and civil rights suits. *Bounds,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72. *Bounds* held that this obligation is satisfied for adult inmates in state correctional institutions by furnishing inmates with access to a law library or access to persons trained in the law. *Id.* The Court notes that the *Bounds* formula probably must be modified for juveniles, because juveniles are not likely to benefit from a law library.[12] The determination of whether or not an inmate is provided with meaningful access to the courts requires taking into account the experience and intelligence of the inmate. Accordingly, courts recognize that an adequate law library does not provide meaningful access to the courts for inmates unable to comprehend legal materials. *See, e.g., Hadix v. Johnson,* 694 F.Supp. 259, 288 (E.D.Mich. 1988).[13]

Defendant requests, in the interest of federalism, that the Court give the Department of Youth Development the first opportunity to correct the State's constitutional violation. The Court recognizes that the provision of meaningful, adequate and effective access to the courts is a flexible concept and could conceivably be satisfied by a variety of methods. Accordingly, an Order will be entered requiring defendant to submit a plan to remedy the constitutional violation. Plaintiffs will then be given additional time to file objections to the plan. After the Court is in receipt of defendant's plan and plaintiffs' objections, the Court will determine if an evidentiary

---

**10.** This prioritization is, no doubt, due to the fact that indigent defendants have a constitutional right to counsel at the trial stage of a criminal proceeding, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and on the initial direct appeal of the criminal conviction, *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1950), but not at post-conviction proceedings, *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

**11.** This is not to say that the program cannot serve as a meaningful starting point for providing adequate assistance. When devising a remedy for this constitutional violation, defendant is free to submit evidence from the Public Defend-

ers serving Fayette and Bledsoe counties regarding their ability to operate legal assistance programs at Taft and Wilder Youth Centers.

**12.** A majority of the juveniles confined in Tennessee's juvenile correctional facilities read at below a sixth grade level.

**13.** This Court is not holding that juveniles have a Sixth Amendment right to counsel at post-conviction proceedings or when bringing civil rights actions. The Court is mindful that *Bounds* is not meant to be a vehicle for creating a right to counsel at a particular stage of a criminal proceeding. *Murray v. Giarratano,* 109 S.Ct. at 2771.

hearing is necessary before it issues a final remedial order in this matter.